**Albert ZUCKER; Sarah Mandelbaum, Plaintiffs–Appellants,**

**Weiss & Yourman; Stull, Stull & Brody, Appellants,**

v.

**OCCIDENTAL PETROLEUM CORPORATION; Ray Irani; Howard Collins, Defendants–Appellees,**

---

**Walter Kaufmann, Appellee.**

No. 97–56270.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 2, 1998.

Decided Oct. 19, 1999.

James E. Tullman, Donald S. Urrabazo, Weiss & Yourman, Los Angeles, California, for the plaintiffs-appellants.

Lawrence W. Schonbrun, Berkeley, California, for appellee Walter Kaufmann.

Before: KOZINSKI and KLEINFELD, Circuit Judges, and PANNER,[1] Senior District Judge.

KLEINFELD, Circuit Judge:

This case involves attorneys' fees in a securities fraud class action.

## FACTS

Occidental Petroleum had for many years paid dividends of $2.50 per share, whether it made that much money or not. When it was short of profits to pay the dividends, it sometimes sold assets to cover the $2.50. In the fall and winter of 1990, the chairman of the board and company officials told the media that they remained committed to the dividend policy.

But the policy changed on January 14, 1991. Occidental announced that the dividend would be $1.00 per share instead of $2.50. Three law firms filed a class action on behalf of people who had bought Occidental stock between September 18, 1990, the first assurance of the $2.50 mentioned in the complaint, and January 11, 1991, when the policy changed. The plaintiffs' theory was that Occidental lulled purchasers into thinking they were buying a $2.50 per share stream of income they could count on, and then left them with a much smaller and less certain stream of income.

The class action settled. Nothing about the securities fraud claim is now in dis-

---

1. The Honorable Owen M. Panner, Senior District Court Judge for the District of Oregon, sitting by designation.

pute. This dispute is solely about attorneys' fees. It arises because, in the settlement, the attorneys got about $3 million in fees (initially), and the class members got no cash at all. On settlement, Occidental promised the class members that, beginning in 1997, dividends would be set according to a formula yielding $1.00 or fifty cents on the dollar of earnings, whichever was more, through 1997, subject to the directors' business judgment and other qualifications.[2] The settlement provided that plaintiffs' attorneys would ask the court to approve fees and reimbursements not to exceed $2,975,000, to be paid by defendants, and defendants would not oppose the request.

On February 24, 1993, Walter Kaufmann, represented by Lawrence W. Schonbrun, filed notice that, as a member of the proposed settlement class, he intended to object to the merits of the settlement and to the amount of attorneys' fees. Over objection, the district court approved the settlement on November 1, 1993, and awarded attorneys' fees in the amount of $2,975,000 to the plaintiffs' class counsel.

Mr. Kaufmann appealed, arguing that the district court denied him due process by not giving him a hearing on his objection, and that the attorneys' fee award was excessive. We implicitly rejected plaintiffs' argument that Mr. Kaufmann lacked standing, and rejected Mr. Kaufmann's due process argument. But we vacated the attorneys' fees award and remanded, because the district court had not articulated adequately its reasons for approving the fee.[3]

On remand, the district court cut the fee from almost $3 million to a little over $1 million. Plaintiffs' attorneys again argued that Kaufmann lacked standing for purposes of Article III jurisdiction, but the district judge read our disposition as implicitly rejecting that argument. The district judge rejected the plaintiffs' attorneys' argument that their fees should be a percentage of the increase in value in Occidental's stock, because the claim that their work caused the increase was unpersuasive speculation. The "lodestar" amount was $1,397,107. The judge articulated several reasons why a risk multiplier should not be applied, among them that "the Settlement Agreement did not provide for one dime of direct compensation to the class." Because the district judge also thought that the attorneys' claimed rates were high, the attorneys had not submitted evidence of current prevailing rates in the community, and some aspects of the charges were high, he reduced the lodestar to $1,151,527.80. For knocking roughly $2 million off the plaintiffs' attorneys' fees, Kaufmann was awarded $48,774.62 in attorneys' fees.

This appeal is by the class action plaintiffs. Their only point on appeal is that

2. Here is the language of the settlement agreement:

(1) It will be the policy of Occidental's Board to maintain the annual dividend on Occidental's outstanding shares of common stock at no less than $1.00 per share through 1997:(2) It will be the policy of Occidental's Board to pay as annual dividends on its outstanding shares of common stock 50% of Occidental's earnings applicable to common stock, if such earnings on a recurring and sustainable basis, as the Board shall determine, exceed $2.00 per share per annum, and to maintain that policy at least through 1997; (3) The Board's policy will be that, if recurring earnings on a sustainable basis, as the Board shall determine, do not exceed $2.00 per share in 1993, 1994 or 1995, the dividend policy set forth above will extend to 1996 and 1997 at the rate of 60% of recurring earnings on a sustained basis, as the Board shall determine; (4) The above-described Dividend Policy will be subject to the exercise by the Board of its fiduciary obligations, and the exercise of the Board's business judgment in connection with, among other things, the declaration of future dividends, as well as to any and all requirements of Delaware law or any other applicable law, and to any and all covenants, restrictions or limitations in connection with any financing, now or in the future.

3. *Zucker v. Occidental Petroleum Corp.*, 68 F.3d 482 (table) (9th Cir.1995) (unpublished memorandum disposition).

Kaufmann lacked standing to object to the attorneys' fee award. They ask us to vacate the district court judgment cutting their fee award to $1 million, and restore the $3 million in fees initially awarded.

## ANALYSIS.

Class actions commonly produce a common fund from which attorneys' fees are drawn, with the residue to be paid to the class.[4] The particularized, traceable, remediable injury necessary for an objector's standing[5] arises from his claim on his share of whatever is left in the pot after attorneys' fees are withdrawn.

The peculiarity that gives rise to the standing argument is that the class did not get a dime in cash. If it had, this would probably be a common fund case. Because the class members got no cash, there was no common fund, and class members do not pay the fee out of their money. Thus Kaufmann does not lose money out of his own pocket to the extent that it is paid to the class's lawyers. Instead, the defendant pays it, based on negotiations between the defendant and the plaintiff class's attorneys. The plaintiffs' theory is that if the fees are higher or lower, it affects only plaintiffs' attorneys and defendants, not the class members. They argue that because Kaufmann sold his Occidental stock, he does not even have an interest in whether the corporate treasury is unduly depleted.

The issue of standing is difficult. Whether a class member has standing to challenge a class action settlement is an open question in this circuit, and other circuits have split on whether the challenger must be an intervenor.[6] The question of whether a class member has standing to challenge the award of attorneys' fees is a separate question that may be resolved differently.[7] In a case where the objector, not the attorneys for the plaintiff class as in this case, appealed, the Tenth Circuit held that a non-intervening objector has standing to challenge attorneys' fees, even though he does not have standing to challenge the settlement of the substantive claim.[8] On the one hand, it is hard to see how cutting plaintiffs' attorneys' fees can do Kaufmann any good. He gets the same money whether the fee is cut or not—none—and the same promise regarding future dividends. If cutting the fee cannot affect him, then it is not immediately apparent how any harm to him is "likely to be redressed by a favorable decision."[9] On the other hand, a client whose attorney accepts payment, without his consent, from the defendants he is suing, may have a remedy, and this remedy may extend to a plaintiff class whose class attorneys accept payment from the defendants the class is suing.

The principles of agency are useful to illustrate how a class member has an interest in attorneys' fees, even outside the

**4.** See In re Coordinated Pretrial Proceedings, 109 F.3d 602, 608 (9th Cir.1997).

**5.** See Snake River Farmers' Assoc., Inc. v. Dep't of Labor, 9 F.3d 792, 795 (9th Cir.1993) ("The federal courts lack power to make a decision unless the plaintiff has suffered an injury in fact, traceable to the challenged action, and likely to be redressed by a favorable decision.").

**6.** Compare Felzen v. Andreas, 134 F.3d 873, 875 (7th Cir.1998) (restricting standing to challenge settlement to class members who intervened in class action); Shults v. Champion Int'l Corp., 35 F.3d 1056, 1061 (6th Cir. 1994) (same); Gottlieb v. Wiles, 11 F.3d 1004, 1009 (10th Cir.1993) (same); Croyden Assocs.

v. Alleco, Inc., 969 F.2d 675, 679–80 (8th Cir.1992) (same); Walker v. City of Mesquite, 858 F.2d 1071, 1074 (5th Cir.1988) (same); Guthrie v. Evans, 815 F.2d 626, 628–29 (11th Cir.1987) (same) with Carlough v. Amchem Prods., Inc., 5 F.3d 707, 713–14 (3d Cir.1993) (granting standing to challenge class action settlement to nonnamed members).

**7.** See Rosenbaum v. MacAllister, 64 F.3d 1439, 1442–43 (10th Cir.1995) (holding that nonintervenor class member has standing to appeal attorney's fees).

**8.** See id.

**9.** Snake River Farmers' Assoc., 9 F.3d at 795.

common fund situation. For an agent to accept money from a third party without the principal's consent in the matter for which the agent is employed may be a breach of the agent's fiduciary duty to the principal, because the money may be an inducement to serve the third party's rather than the principal's interests.[10] A client who employs a lawyer to litigate against a third party has a legitimate interest in having his lawyer refrain from taking the third party's money in exchange for throwing the fight. (This is a discussion about the agency principles generally affecting standing, and we intimate no suggestion that the lawyers in the case at bar acted improperly.) When an agent does take money from the third party in the matter of the agency without his principal's consent, he is sometimes deemed to hold the money in a constructive trust for his principal.[11] Under this rule, Kaufmann could have a remediable injury, if he were entitled to a proportionate share of the class lawyers' $3 million.

These agency principles apply with special vigor to attorneys. Canon 38 of the Canons of Ethics provided that a lawyer could accept nothing bearing on the matters for which he was employed, without "knowledge and consent of his client after full disclosure." [12] Disclosure was necessary but not sufficient, because the lawyer might "by accepting or bargaining for any compensation from the other side, even if

fully disclosed to his client, put himself in a position which will interfere with his wholehearted duty to his client." [13] The current Rules of Professional Conduct carry this principle forward with the formulation that a "lawyer shall not accept compensation for representing a client from one other than the client unless: ... the client consents ...; [and] there is no interference with the lawyer's independence of judgment." [14] As the official comment says, "[w]here the client is a class, consent may be obtained on behalf of the class by court-supervised procedure." [15]

In a class action, substantial justice may require the court do more than encourage settlement. The absence of individual clients controlling the litigation for their own benefit creates opportunities for collusive arrangements in which defendants can pay the attorneys for the plaintiff class enough money to induce them to settle the class action for too little benefit to the class (or too much benefit to the attorneys, if the claim is weak but the risks to the defendants high).[16] The risk of collusion may be especially high if defendants can buy off the attorneys with money from their directors' and officers' liability insurance policy, and avoid spending their own money. The supervisory power of the district court affords a mechanism for assuring loyal performance of the attorneys' fiduciary duty to the class. Because of the

---

10. *See Jerlyn Yacht Sales, Inc. v. Wayne R. Roman Yacht Brokerage*, 950 F.2d 60, 67 (1st Cir.1991) (stating that "absent an agreement to the contrary, 'an agent who, without the knowledge of the principal, receives something in connection with, or because of, a transaction conducted for the principal, has a duty to pay this to the principal even though otherwise he has acted with perfect fairness to the principal and violates no duty of loyalty in receiving the amount' ") (quoting Restatement 2d of Agency, § 388 cmt. a); *see also* W. Edward Sell, *Sell on Agency* § 134, at 122 (1975) ("Where the agent receives a substantial amount of money or other property from the third party, this is sufficient to infer that he is acting for that party and will support a judgment against the agent for breach of this duty.").

11. *See* W. Edward Sell, *Sell on Agency* § 132, at 122 (1975) ("In all cases, the agent is held to be a[ ] constructive trustee of the unauthorized profit for the principal.").

12. Model Code of Professional Responsibility Canon 38 (1980).

13. Henry S. Drinker, *Legal Ethics* 97 (1953).

14. Model Rules of Professional Conduct Rule 1.8(f) (1983).

15. *Id.* cmt. (4).

16. *In re General Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 801–06 (3d Cir.1995).

attorneys' fiduciary responsibility to the class, of which Kaufmann was an economically interested member, and the possibility of a constructive trust had fiduciary duties been found to have been breached, it may well be that despite having sold his stock prior to the attorneys' fees award, Kaufmann retained standing to object to the amount of attorneys' fees.

Plaintiffs argue that *In re First Capital Holdings Corp. Securities Litigation* [17] requires this court to hold that Kaufmann has no standing to object, so that the district court order cutting the fee should be vacated. We held in *First Capital* that a class member lacked standing to appeal an attorneys' fees award, because she did not suffer the injuries for which the class action was brought. That case is distinguishable, both because Kaufmann is not appealing, and because he did suffer the claimed injury for which the class action was brought, purchase of stock on a false assurance of a stream of $2.50 dividends. We carefully noted in *First Capital* that the appellant's "lack of injury [was] unique," "[t]he fact that attorneys fees were separately negotiated and funded has nothing to do with the outcome," and "[w]e do not decide the question whether another class member could attack the fee award." [18] Judge Sneed, dissenting, thought that "[a]rguably, a class member always retains an interest in attorney fees, even when her claims have been met in full." [19] *First Capital* establishes that where a class action is brought on account of an economic injury, and the particular class member did not suffer the economic injury which furnished the basis for the class action, that individual lacks standing to appeal the attorneys' fees award. The economic injury for which the class action was brought, not economic injury from the attorneys' fees, is what *First Capital* spoke to. The class was evidently defined somewhat broadly in that case, and included people like the appellant who had not been harmed. We expressly refrained from addressing the question whether members of the class who had suffered the injury for which the action was brought could object to attorneys' fees.

In this case, we need not decide whether Kaufmann would have standing to appeal. He has not appealed; plaintiffs have. Nor need we decide whether the $3 million fee should be reinstated; it is law of the case that the fee award has been vacated because the district court did not articulate a sufficient basis for it. More important, we need not decide whether Kaufmann had standing to object to attorneys' fees. No one needed standing, or needed to object, for the district court to reconsider the amount of attorneys' fees and decide upon an amount. Because of our previous decision vacating the $3 million award, the district court had to decide upon an award and articulate its reasoning to comply with our mandate. In a class action, whether the attorneys' fees come from a common fund or are otherwise paid, the district court must exercise its inherent authority to assure that the amount and mode of payment of attorneys' fees are fair and proper.[20] This duty of the court exists independently of

---

17. 33 F.3d 29 (9th Cir.1994).

18. *Id.* at 30 n. 1.

19. *Id.* at 31.

20. *See Parker v. Anderson*, 667 F.2d 1204, 1214 (5th Cir.1982) ("The evil feared in some settlements-unscrupulous attorneys negotiating large attorney's fees at the expense of an inadequate settlement for the client-can best be met by a careful district judge, sensitive to the problem, properly evaluating the adequacy of the settlement for the class and determining and setting a reasonable attorney's fee

.…"); *see also In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 608 (9th Cir.1997) ("In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund."); *Jordan v. Mark IV Hair Styles, Inc.*, 806 F.2d 695, 697 (6th Cir.1986); *Dunn v. H.K. Porter Co.*, 602 F.2d 1105, 1109 (3d Cir.1979).

any objection. Therefore it exists, *a fortiori*, regardless of whether an objector has a remediable economic stake in the court's decision. Because the district court had the authority and duty to pass upon the fairness of the attorneys' fees settlement independently of whether there was objection, we need not decide whether the objector had standing.

■ No Article III case or controversy is needed with regard to attorneys' fees as such, because they are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot.[21] Its jurisdiction outlasts the "case or controversy." Our conclusion that we need not decide whether Kaufmann had standing is consistent with the reasoning of the Eighth Circuit.[22] It found that because "the reasonableness of attorneys' fees is within the overall supervisory responsibility" of the court in a class action, the court did not need to reach the question of whether an objector has standing.[23]

Kaufmann's standing to sue is not at issue, because he did not sue; the class did. Kaufmann's standing to object need not be decided, because the district court had to decide how much to approve in attorneys' fees whether he objected or not. And his standing to appeal is not at issue because, in the case now before us, he did not appeal. The contribution his attorney made, by providing an adversarial context in which the district court could evaluate the fairness of attorneys' fees, was substantial. Because the district court had to make this determination regardless of whether Kaufmann had standing, we need not decide whether he did.

AFFIRMED.

**21.** *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 395–96, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Cammermeyer v. Perry,* 97 F.3d 1235, 1238 (9th Cir.1996).

**22.** *See Grunin v. International House of Pancakes,* 513 F.2d 114 (8th Cir.1975).

**23.** *Id.* at 127 n. 13.