229 F.3d 1249 (9th Cir. 2000)
 ROBERT POWERS; PETER J. FRANKLIN; SEA BREEZE PRINTING, INC.; GARVIN D. STANISLAWSKI; STARLOG GROUP, INC.AND STARLOG GROUP, INC. DEFINED PENSION PLAN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED; HOWARD SOBEL; RICHARD STRAUSZ; RICHARD W. HALSEY, Plaintiffs-Appellees,
WILFRED GEORGE, Class Member/Objector-Appellant,
v.
PAUL EICHEN; ROBERT JOHNSON; KENNETH E. OLSON; FREDERICK PARKER; MICHAEL TAMKIN; MICHAEL VOGT; DENNIS A. WHITTLER; MARY ZOELLER; ARTHUR MINICH; JOHN M. SEIBER; JOHN THOMAS; JEFFREY NASH; PROXIMA CORPORATION; JOHN E. REHFELD; CHARLES S. CHESTNUTT, Defendants.
 No. 98-56997
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted June 8, 2000
Filed October 20, 2000
 
 [Copyrighted Material Omitted]
 Lawrence W. Schonbrun, Law Offices of Lawrence W. Schonbrun, Berkeley, California, for the plaintiffs.
 Keith F. Park, Milberg Weiss Bershad Hynes & Lerach LLP, San Diego, California, for the defendants.
 Robert W. Brownlie, Gray Cary Ware & Freidenrich LLP, San Diego, California, for amicus curiae Proxima Corporation.
 Appeal from the United States District Court for the Southern District of California. Rudi M. Brewster, District Judge, Presiding. D.C. No. CV-96-01431-RMB
 Before: Alex Kozinski, Thomas G. Nelson, and Kim McLane Wardlaw, Circuit Judges.
 WARDLAW, Circuit Judge:
 
 
 1
 Wilfred George, an unnamed class member who failed to intervene in the proceedings below, appeals the district court's order awarding attorneys' fees to class counsel in the amount of thirty percent of the settlement. We hold that because George filed an objection to the fee request in the district court, he has standing to pursue this appeal. We also determine that, although the district court properly calculated the attorneys' fees as a percentage of the gross settlement amount, it did not adequately explain the basis for the award. We therefore vacate the order awarding fees to class counsel and remand the case to the district court.
 
 I. Background
 
 2
 Appellees, a class of shareholders, sued Proxima Corporation and its various directors and officers (collectively "Proxima") for securities fraud. They allege that Proxima made false and misleading statements about the corporation's business prospects, which inflated the price of its stock and allowed Proxima insiders to sell stock at the inflated price to the detriment of the shareholders.
 
 
 3
 The district court approved the named class members as lead plaintiffs and appointed their counsel, the firm of Milberg, Weiss, Bershad, Hynes & Lerach, as lead counsel. Proxima filed a motion to dismiss, which was granted in part. See Powers v. Eichen , 977 F. Supp. 1031 (S.D. Cal. 1997). The district court then certified a class, consisting of all persons who transferred Proxima common stock from July 26, 1994, through May 28, 1997, under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The parties entered into settlement negotiations and eventually reached an agreement. On July 24, 1998, the court provisionally approved the settlement and approved the plan for notice to the settlement class members.
 
 
 4
 On September 3, George filed an objection to the settlement. The district court held a hearing regarding the approval of the settlement on October 26. At the hearing, the class attorneys requested a fee of thirty percent of the settlement amount. George argued that "class counsel is now in a conflict with the class with regard to this issue of fees and . . . there needs to be in this case a class guardian appointed." George also argued that a lodestar rather than a percentage of recovery calculation should be used to ascertain attorneys' fees and that any percentage fee should be calculated from the net rather than the gross recovery.
 
 
 5
 The district court approved the settlement agreement at the hearing and took the issue of attorneys' fees under submission. In a written order dated October 29, the court granted lead counsel's request for fees in the amount of thirty percent of the settlement plus expenses. The percentage fee was calculated based on the gross recovery. The order stated: "The court finds that the amount of fees awarded is fair and reasonable under the `percentage of recovery method.' " We have jurisdiction under 28 U.S.C. 1291 to hear George's timely appeal.
 
 II. Standing
 
 6
 The named class members (collectively "Powers") argue that George has no standing to object to the amount of attorneys' fees because he did not move to intervene in the district court. George contends that Ninth Circuit precedent establishes his right to appeal. We reject both contentions. Neither Supreme Court authority, our own precedent, nor Rule 23 itself speaks to the issue before us. We have recently described this as an open question in our circuit. See Zucker v. Occidental Petroleum Corp., 192 F.3d 1323, 1326 (9th Cir. 1999). We decide it here.[1]
 
 
 7
 The general rule "that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." Marino v. Ortiz, 484 U.S. 301, 304 (1988) (per curiam). In Marino, two independent minority groups brought Title VII actions against the City of New York alleging that the New York City Police Department's police sergeant examination was discriminatory. Several groups intervened, a settlement was reached, and a consent decree was entered approving the settlement. Rather than intervene, a group of police officers filed a separate lawsuit after the interim approval of the settlement and before consent decree, claiming the settlement violated their equal protection rights under the Fourteenth Amendment. They also attempted to appeal from the consent decree itself.
 
 
 8
 Addressing whether Petitioners had standing to appeal the consent decree, the Supreme Court held that "because petitioners were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may not appeal from the consent decree approving that lawsuit's settlement." Id. The Court noted the circuit court's suggestion that "there may be exceptions to this general rule, primarily `when the nonparty has an interest that is affected by the trial court's judgment,' " but held that "the better practice is for such a nonparty to seek intervention for purposes of appeal." Id. (citation omitted).
 
 
 9
 Powers asserts that Marino controls the standing issue here. He relies on decisions in the Fifth, Sixth, Seventh, and Eighth Circuits which have extended Marino to block the appeals of unnamed class members in Rule 23 actions failed to intervene in the district court. See Walker v. City of Mesquite, 858 F.2d 1071, 1074 (5th Cir. 1988) (holding that "[i]n Marino, the Supreme Court concluded that individuals who were nonparties and who chose not to intervene in a class action could not later appeal the final judgment in that action"); Shults v. Champion Int'l Corp., 35 F.3d 1056, 1060 (6th Cir. 1994) (deeming the interests of an unnamed non-intervening class member in the outcome of litigation similar to the interests of a non-intervening nonparty and citing Marino for the proposition that neither has standing to appeal the outcome of litigation); In re Brand Name Prescription Drugs Antitrust Litigation , 115 F.3d 456, 457-58 (7th Cir. 1997) (citing Marino for the proposition that "a nonparty has no right to appeal" and holding that if non-intervening unnamed class members were allowed standing to appeal, "the coherence of the class is destroyed, the scope of the class action becomes unclear, and the control over the action becomes divided and confused"); Croyden Assoc. v. Alleco, Inc. , 969 F.2d 675, 679 (8th Cir. 1992) (stating that "Marino provides substantial support for holding that unnamed class members who object to a settlement must move to intervene, and they will be denied standing to appeal when they have not done so").
 
 
 10
 The Tenth and Eleventh Circuits have also held that nonparties in class action suits lack standing to challenge the approval of a class action settlement although their decisions do not cite Marino . See Gottlieb v. Wiles, 11 F.3d 1004, 1006 (10th Cir. 1993) (holding that "standing is dependent upon a grant of intervention, a result which we believe . .. best serves the policy underlying Rule 23 class actions"); Guthrie, 815 F.2d at 628 (emphasis omitted) (holding that a class member who is not a named plaintiff does not have standing to appeal the final judgment in a class action); see also Moore's Federal Practice 3d 23.86[2]. These circuits deny standing to unnamed class members for three primary reasons:
 
 
 11
 First, such individuals cannot represent the class absent the procedures provided for in Rule 23 of the Federal Rules of Civil Procedure. Second, class members who disagree with the course of a class action have available adequate procedures through which their individual interests can be protected. Third, class actions could become unmanageable and non-productive if each member could individually decide to appeal.
 
 
 12
 Guthrie v. Evans , 815 F.2d 626, 628 (11th Cir. 1987)(emphasis omitted).
 
 
 13
 In contrast, George argues that our pre-Marino case, Marshall v. Holiday Magic, Inc., 550 F.2d 1173 (9th Cir. 1977), provides him with standing to pursue his appeal. We do not believe that either Marino or Marshall govern our decision. Neither directly addressed the issue confronting us here: whether an unnamed class member (who did not intervene) has standing to appeal an attorneys' fee award -as opposed to the settlement itself.
 
 
 14
 Marino is distinct from the case at bar in two important respects. First, Marino did not involve a Rule 23 class action. Instead, it dealt with the issue of whether appellants -who were not parties to the underlying lawsuit -could appeal the entry of a consent decree approving the underlying lawsuit's settlement. Second, the nonparty appellants in Marino had not made any attempt to intervene -or even appear -in the district court, but sought to challenge the consent decree for the first time on appeal. Here, George is a class member, albeit unnamed, who appeared in the district court and filed an objection before bringing this appeal.
 
 
 15
 Neither Marshall nor our later decision in Dosier v. Miami Valley Broad. Corp. , 656 F.2d 1295, 1299 (9th Cir. 1981),[2] provides us with a rationale for allowing a non-intervening unnamed class member to appeal. In Marshall, the district court consolidated a number of class actions brought against Holiday Magic, a cosmetic company, on behalf of its distributors. When a settlement agreement was proposed, all distributors were notified of the pending action, of the proposed settlement, and of their right to object or opt out. After the district court approved the settlement, Marshall and several other distributors appealed, arguing that the court abused its discretion in approving the settlement award. Holiday Magic challenged the appellants' standing, claiming that they were not members of the plaintiff class. The entire sum of the court's analysis of the standing issue follows:Appellees argue that appellants lack standing because they are neither members of the plaintiff class nor settling defendants. Thus appellees contend, they have no interest in the judgments. However, the class as determined by the district court consisted of all distributors and security holders of Holiday Magic. Appellants fall into this category and received notice as members of this plaintiff class. As members of the class, their legal rights are affected by the settlement and they have standing to sue.
 
 
 16
 Marshall , 550 F.2d at 1176. Dosier does not clarify the rationale behind the Marshall decision. It simply allows the appeal without discussing the issue of standing.[3] See Dosier, 656 F.2d at 1299. Thus, neither Marshall nor Dosier clearly addressed the question before us. See Zucker, 192 F.3d at 1326 (describing this as an "open question in this circuit").[4]
 
 
 17
 To answer this open question, we turn to the rationale behind Rule 23 of the Federal Rules of Civil Procedure and the general rule disallowing appeals by nonparties. Rule 23 class actions are intended "to unify and render manageable litigation in which there are many members of a homogeneous class with common claims against a defendant." Rosenbaum v. MacAllister , 64 F.3d 1439, 1442 (10th Cir. 1995). Rule 23 allows defendants to resolve in one case their liability to all class members who have not opted out. See id. But the court must first find "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to intervene, a class member must successfully challenge the representative's ability to represent the class as a whole. See Rosenbaum, 64 F.3d at 1442.
 
 
 18
 Distinguishing between Rule 23 and Rule 23.1, the Tenth Circuit has allowed appeals by unnamed class members in shareholder derivative suits under Rule 23.1 but not in class action suits under Rule 23. Compare Rosenbaum v. MacAllister , 64 F.3d 1439, 1442-43 (10th Cir. 1995) (allowing appeal in Rule 23.1 case),[5] with Gottlieb, 11 F.3d at 1012 (dismissing appeal in Rule 23 case). In making this distinction, the Tenth Circuit explained:
 
 
 19
 Rule 23.1 does not offer the same protective mechanisms offered by Rule 23. Unlike class actions under Rule 23, in shareholder derivative suits under Rule 23.1, a preliminary affirmative determination that the named plaintiffs will fairly and adequately represent the interests of the other class members is not a prerequisite to the maintenance of the action. Rather, the rule provides only that the derivative suit may not be maintained if it appears that the named shareholder does not fairly and adequately represent the other shareholders. Fed. R. Civ. P. 23.1. In addition, there is no opt-out provision in shareholder derivative suits. Thus, all shareholders are bound by the outcome regardless of their objections.
 
 
 20
 Gottlieb , 11 F.3d at 1011.
 
 
 21
 The Second and Third Circuits have addressed the issue in the context of shareholders' derivative suits only. See Kaplan v. Rand , 192 F.3d 60, 67 (2d Cir. 1999); Bell Atlantic Corp. v. Bolger , 2 F.3d 1304, 1310 (3rd Cir. 1993). (Finding standing for a non-intervening unnamed party to challenge the fairness and adequacy of a settlement in the context of Rule 23.1, the Third Circuit in Bolger explained:
 
 
 22
 Plaintiffs' attorneys and the defendants may settle in a manner adverse to the interests of the plaintiffs by exchanging a low settlement for high fees. Such a risk cautions against creating obstacles to challenging derivative action settlement agreements.
 
 
 23
 . . . .
 
 
 24
 Assuring fair and adequate settlements outweighs concerns that non-intervening objectors will render the representative litigation "unwieldy."
 
 
 25
 Id. at 1310 (footnote omitted).
 
 
 26
 In Felzen v. Andreas , 134 F.3d 873 (7th Cir. 1998), the Seventh Circuit rejected the distinction between Rule 23 and Rule 23.1, becoming the only circuit to deny nonparty shareholders the standing to challenge a shareholder derivative suit. 134 F.3d at 874-76. The court reasoned that because a shareholder derivative suit is brought in the corporation's name to rectify an injury suffered by the corporation, the individual investors, unlike class members with real grievances, are not injured parties. See id. at 875-76. As a result, disgruntled shareholders have no standing to appeal. By requiring both unnamed class members and non-party shareholders to intervene in the district court if they wish to preserve an appeal, the Seventh Circuit explicitly overturned its previous authority "allowing non-parties to appeal from a decision of `any kind of class action.' " Id. at 875-76. The Supreme Court granted certiorari in Felzen, but failed to decide this question, affirming by an equally divided court. See California Public Employees Retirement Sys. v. Felzen, 525 U.S. 315 (1999) (per curiam).
 
 
 27
 Although other circuits have considered whether to allow non-intervening unnamed parties to appeal the fairness of a settlement award in a Rule 23 class action, we find the Tenth Circuit decision in Rosenbaum, 64 F.3d 1439, to be most persuasive in considering whether a non-intervening unnamed class member has standing to challenge a fee award -as opposed to the settlement itself.
 
 
 28
 In a well-reasoned opinion, the Tenth Circuit first acknowledged the purposes behind the no appeal rule, stating that allowing "a nonintervening class member to appeal approval of a settlement would permit one dissident -and there is likely always to be one -to postpone realization of any of the benefits that might otherwise come to the class members." Id. at 1442. The court then explained its belief that "an individual dissident class member who did not intervene to appeal an attorney's fee award would not be nearly as disruptive." Id. The court reasoned that: 1) the named class members' ability to represent the class "is likely to break down when the issue is the appropriate fee for her own lawyers"; 2) notice of a settlement often does not contain detailed information about the amount of the fees but simply notifies class members of the fee's outside limit; and 3) "the opt out feature of Rule 23(b)(3) class actions seems inoperable in the context of a member satisfied with the settlement generally, but potentially dissatisfied with the attorney's fee award [because] [b]y the time the member knows the amount of the fee the court awards[,] the time to opt out has expired. " Id. at 1443.
 
 
 29
 We agree with the Tenth Circuit. The procedural mechanisms of Rule 23 do not protect unnamed class members concerned with the amount of a potential attorneys' fee award. Once a settlement has been approved, the notice and opt-out provisions no longer protect a dissenting class member. In addition, the class member may be satisfied with the settlement terms and conditions, taking issue only with the amount of attorneys' fees requested. Unnamed class members, who may not have been privy to the fee negotiations, have a strong incentive to litigate the reasonableness and fairness of attorneys' fees due to the inverse relationship between attorneys' fees and the ultimate value of the class member's award. Requiring an appellant to intervene under Rule 24 of the Federal Rules of Civil Procedure in order to challenge an attorneys' fee award creates a procedural hurdle that would delay the ultimate resolution of the case and unnecessarily burden those involved. Assuring fair and adequate fee awards outweighs the danger that allowing appeals by nonintervening unnamed parties will complicate the settlement process. Furthermore, when the appellant appears below and objects on the record, as occurred in this case, we ordinarily have sufficient information upon which to review the attorneys' fee award. Accordingly, we hold that an unnamed class member who files an objection in district court to the amount of attorneys' fees requested in a class action settlement under Rule 23 may appeal the award of such fees without intervening in the district court.
 
 III. The Attorneys' Fees Award
 
 30
 Finding that George has standing, we now decide whether the attorneys' fee award was reasonable. Because"the district court has broad authority over awards of attorneys' fees" in class actions, we review the award for abuse of discretion. In re FPI/Agretech Sec. Litig., 105 F.3d 469, 472 (9th Cir. 1997).
 
 A. The Percentage Method
 
 31
 George argues that the district court abused its discretion by using the percentage method rather than the lodestar method to calculate attorneys' fees. We disagree."The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases." In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig. , 109 F.3d 602, 607 (9th Cir. 1997). The district court abuses its discretion when it uses a mechanical or formulaic approach that results in an unreasonable reward. See id. As long as the fee award is reasonable and the district court adequately explains its determination by written order or in open court, adopting the percentage approach is not an abuse of discretion.
 
 B. Explanation of the Fee Award
 
 32
 George next argues that the district court abused its discretion by failing to specify reasons for approving the fee award and for allowing attorneys' fees in an amount greater than the "benchmark" of twenty-five percent. We have explained that the district court must specify its reasons for approving a particular attorneys' fees award so that we may conduct meaningful review. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1213 (9th Cir. 1986) ("Without some indication or explanation of how the district court arrived at the amount of fees awarded, it is simply not possible for this court to review such an award in a meaningful manner."). We have also established twenty-five percent of the recovery as a"benchmark" for attorneys' fees calculations under the percentageof-recovery approach. See Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1376 (9th Cir. 1993); Paul, Johnson, Alston & Hunt v. Graulty , 886 F.2d 268, 272 (9th Cir. 1989). A district court may depart from the benchmark but, "[i]f such an adjustment [to the benchmark] is warranted, . . . it must be made clear by the district court how it arrives at the figure ultimately awarded." Graulty, 886 F.2d at 272. The district court need not explain its decision in a written order of the court, but such explanation must be in the record. See In re Pacific Enters. Sec. Litig., 47 F.3d 373, 377 (9th Cir. 1995) (stating that the district court's "conclusory statement [that the settlement was fair and reasonable] alone would not be satisfactory, but the record reflects that [the judge ] also held an extensive settlement hearing where he responded to .. . objections and explained why the derivative settlement is fair"). In this case, we conclude that the district court did not adequately explain its reasons for approving the fee award.
 
 
 33
 The district court exceeded the benchmark by awarding attorneys' fees of thirty percent of the settlement amount. Although the court provided a lengthy explanation of some of the considerations involved in determining a reasonable fee, it did not indicate how those different considerations should be weighed. Near the end of the hearing, the court said:
 
 
 34
 [Y]ou have to take into consideration so many things. I mean, are you sure of payment? Can you go to the bank with your accounts receivable, or is it on the come or is your client insolvent? Is it a contingent fee? Was it a slam-dunk case or did it involve a lot of sweat and strain, a lot of hours at night, a lot of sleepless nights?
 
 
 35
 I mean, all of these things have to be taken into consideration. I know there was a lot of that in this case. I know there was a great deal of concern about payment. I know there was a great concern about winning. I know there was a great concern about losing.
 
 
 36
 There were complications of insurance coverage that would drive a wise man crazy in trying to separate it. I'm sure that the lawyers could never really figure it all out. But each one of them could potentially involve a lawsuit.
 
 
 37
 I mean, it's incredible what happens in these class actions. I don't think the public has any idea the complications of a class action. I don't think they have any idea.
 
 
 38
 When discussing why it might be appropriate to award more than the twenty-five percent benchmark, the district judge noted that the litigation presented difficult issues, "as many problems as porcupines have quills." In an exchange with George's counsel, the court explained that counsel for the plaintiffs took a risk by taking the case on a contingency basis:
 
 
 39
 It's one thing to charge a rate that is going to be paid. You can go to the bank with it. But it's another thing to work on a case and log hours, hoping that someday they're going to win because, if they win, they're going to get paid handsomely, and if they lose, they just soak it up.
 
 
 40
 At other points in the hearing, however, the district court seemed to favor decreasing the award below the benchmark. For example, the court noted that "[j]ust because you don't have a flood of objections doesn't mean that everybody loves this fee request." The court also questioned whether a higher fee would provide greater incentive to the lawyers, telling the named plaintiffs' counsel: "I think you still would have done your very, very best to get the very best settlement you could, even though you got a little less fee." Finally, the district court questioned the validity of the lodestar calculation the named plaintiffs used to verify that thirty percent was reasonable, asking, "Is it a load [sic] star or a loaded star?" Although two issues were decided at the end of the hearing, the district court reserved the issue of the proper amount of attorneys' fees, stating that it would issue a ruling after doing additional reading.
 
 
 41
 The written order of the court, issued three days after the hearing, did little to clarify how the court decided to award a fee of thirty percent. After announcing the fee award, the court simply stated that "the amount . . . is fair and reasonable under the `percentage of recovery' method." Although we recognize the district court's discretion in this area, we conclude that in this case the fee award was not sufficiently explained. Many of the factors discussed at the hearing may have supported the fee award, but the district court never stated the grounds on which it ultimately relied. The court never explained -either at the hearing or in the written order -exactly why it chose to exceed the benchmark and award a thirty percent fee. As a result, we cannot conduct meaningful appellate review. Because the district court failed to specify adequately the basis for its decision, it abused its discretion.
 
 
 42
 C. Percentage of Gross or Net?
 
 
 43
 George also argues that the district court erred by awarding attorneys' fees calculated on a percentage of the gross recovery rather than a percentage of the recovery minus expenses. Under the Private Securities Litigation Reform Act of 1995, "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. 78u4(a)(6). According to George, the phrase the "amount . . . actually paid to the class" only includes the net amount received after expert fees, litigation costs, and other expenses have been subtracted. Thus, George argues, the attorneys' fees should be calculated as a percentage of net recovery rather than as a percentage of gross recovery.
 
 
 44
 We disagree. Although the new provision requires reasonable fees and expenses, it does not mandate a particular approach to determining fees. The legislation's primary purpose was to prevent fee awards under the lodestar method from taking up too great a percentage of the total recovery. See, e.g., H. R. Conf. Rep. No. 104-369 (1995). The new provision, however, does not eliminate the use of the lodestar approach, nor does it require that fees be based on a percentage of net recovery. It simply requires that the fees and expenses ultimately awarded be reasonable in relation to what the plaintiffs recovered.
 
 
 45
 We note that the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable. Our case law teaches that the reasonableness of attorneys' fees is not measured by the choice of the denominator. See, e.g., Washington Public Power Supply Sys. Sec. Litig., 19 F.3d at 1294 n.2 ("Because a reasonable fee award is the hallmark of common fund cases, and because arbitrary, and thus unreasonable, fee awards are to be avoided, neither [the lodestar nor the percentage] method should be applied in a formulaic or mechanical fashion."). If twenty-five percent of gross is reasonable, perhaps thirty-five percent of net would be reasonable.
 
 
 46
 On remand, the district court may calculate the fee award using the gross settlement amount.
 
 IV. Conclusion
 
 47
 For the foregoing reasons, the decision of the district court is VACATED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 We note that we recently confronted a similar issue when we decided whether a class member had standing to challenge an award of attorneys' fees to be paid independent of the class settlement. See Lobatz v. U.S. West Cellular of Cal., Inc., 222 F.3d 1142 (9th Cir. Aug. 25, 2000). Although the objecting class member was found to have standing, the court did not address the question we decide today. See id. at *5. The Lobatz court analyzed the standing issue in terms of whether the objecting class member suffered sufficient injury when the fee award was paid independent of the settlement award. See id. Concluding that such an injury had been shown, the court found standing without further discussion. See id. Here, we are satisfied that such an injury exists because the fee award is to be paid directly from the settlement award. See infra note 4. It is unclear from the facts provided in Lobatz whether the objecting class member formally intervened in district court or whether she challenged the fee without intervention. See Lobatz , 222 F.3d 1145. Because George objected in the district court without formally intervening, we address the specific issue of whether a non-intervening class member has standing to appeal an attorneys' fee award.
 
 
 [2]
 Dosier is cited by Moore's Federal Practice 3d 23.86[2] as an example of this circuit's willingness to allow appeals"by unnamed class members who did not intervene without addressing the issue of standing."
 
 
 [3]
 In Dosier, the plaintiff attempted to re-litigate discrimination claims covered by a settlement agreement in a previous class action. The court rejected the collateral challenge to the settlement, explaining that "[i]f [Dosier] was dissatisfied with the settlement, he could have challenged it by direct appeal." Dosier, 656 F.2d at 1299.
 
 
 [4]
 In In re First Capital Holdings Corp., we held that the appellant lacked Article III standing because he had suffered no constitutionally recognizable injury. We distinguished Marshall as a case in which the class members had shown they were aggrieved by the order they appealed. See In re First Capital Holdings Corp., 33 F.3d 29, 30 (9th Cir. 1994). In this case there is no dispute over whether George has standing under constitutional standards. To have standing under Article III, a party must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472 (1982) (internal quotations and citation omitted). George has constitutional standing to make this appeal, as the size of his portion of the settlement award is inversely related to the size of the attorney fee award.
 
 
 [5]
 Rosenbaum actually involved both a class action and a shareholders' derivative suit. See Rosenbaum, 64 F.3d at 1441.