Frank W. KNISLEY; Joel W. Harmon, on behalf of themselves and all others similarly situated; Network Institutional Group; Richard Zamora; KBC Equity Fund; Kurtis C. Shulbert; Massimo B. Cappa; Robert E. Alschular Rev Trust U/A 8.26.82; Gerald R. Labiner IRA; Pam Lee; Joanne Parrinello; ING Investment Management; Lester Brickman; Willie Herrera; Jeanette Celia Kuhn Fulton; J.C. Borremans; D. Carlesimo; D. Tomasi; J. Logue; J. Weininger; S. Cohen; N. Lin; M. Scannell; Board of Pensions and Retirement of the City of Philadelphia, Plaintiffs,

Robert A. Vatuone, Plaintiff–Appellee,

and

Noel Gage; Gage & Gage,
LLP, Appellants,

v.

NETWORK ASSOCIATES, INC.; William L. Larson; Zachary A. Nelson; Peter R. Watkins; Prabhat K. Goyal, Defendants.

No. 01–16540.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 15, 2002.

Filed Dec. 6, 2002.

James B. Hicks of Ervin, Cohen & Jessup LLP argued for the appellants. Heather L. McCloskey joined him on the brief.

Richard M. Heimann of Lieff, Cabraser, Heimann & Bernstein, LLP, argued for the appellee. James M. Finberg and Melanie M. Piech joined him on the brief.

Before: KOZINSKI and McKEOWN, Circuit Judges, and FITZGERALD,* District Judge.

KOZINSKI, Circuit Judge:

Noel Gage appeals from an order awarding attorney's fees to Lieff, Cabraser, Heimann & Bernstein, LLP, which represented shareholders in a class action against Network Associates, Inc. Gage argues that the award is excessive in light of what he perceives to be the measly sum shareholders received in the settlement the firm negotiated. We consider whether Gage has standing to appeal the award.

1. The underlying securities litigation arose after Network Associates restated its accounts in April 1999. It announced that it had allocated too much of its acquisition costs to in-process research and development (IPR & D). As a result of this

---

* The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation.

slip of the pen, the company's reported financial results were too rosy by about $230 million. When the problem came to light, its stock price—which had already declined precipitously over the preceding months—tanked.

Several shareholders filed class actions against Network Associates and its executives, alleging that defendants had concealed the company's true state of affairs while selling their own shares at inflated prices. The district judge appointed Robert A. Vatuone as lead plaintiff, who selected Lieff, Cabraser, Heimann & Bernstein, LLP, as class counsel.

Lieff Cabraser conducted discovery, deposing two executives and reviewing some 25,000 pages of documents. As usual in cases of this stripe, the parties settled before trial. Network Associates agreed to put $30 million into a common fund, most of which would come from its liability insurers. Lieff Cabraser would ask the district court to approve an award of about $2 million of this amount as attorney's fees, and most of the rest would go to shareholders who lost money.

Gage was a Network Associates shareholder who was covered by the class definition in the Vatuone suit. While that litigation was underway, Gage was pursuing his own action against the company in state court. Lieff Cabraser sent him the required notice warning that unless he opted out, he would be bound by the class settlement. Gage didn't respond. He later claimed he never received the notice, but the district court found that Lieff's efforts to notify him were sufficient and that the settlement therefore covered him.

Unhappy at having his lawsuit swept out from under him, Gage objected to the settlement. He argued that it was a bad deal for shareholders, who received only a tiny fraction of the total price drop in their shares. He also challenged the size of Lieff Cabraser's fee, arguing that the firm had put in a half-hearted effort and cut a "sweetheart deal" with the company.

Lieff Cabraser defended the settlement and fee. It explained that, although the share price had fallen considerably over several months, it would be hard to tie that drop to the IPR & D misrepresentations. It also pointed out that its fee was a modest seven percent of the recovery—much less than in many other settlements. Finally, it observed that only six class members out of about 150,000 had objected. The district court, after thoroughly considering the arguments, approved the settlement and fee.

The settlement agreement required class members to submit claim forms in order to receive their proportionate share of the settlement fund. Gage refused to do so and instead appealed both the settlement and the fee. While his appeals were pending, he reached an agreement with Network Associates that resolved his challenge to the settlement. All that remains, therefore, is his appeal from the fee award.

**2.** One risk of class action settlements is that class counsel may collude with the defendants, tacitly reducing the overall settlement in return for a higher attorney's fee. *See Staton v. Boeing Co.,* 313 F.2d 447, 473–74 (9th Cir.2002); *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323, 1327–29 & n. 20 (9th Cir.1999). The Federal Rules respond by requiring judicial oversight of class action settlements. Fed.R.Civ.P. 23(e). District judges must review both the fairness of the settlement and the reasonableness of the attorney's fee. *Zucker,* 192 F.3d at 1328 & n. 20. A dissatisfied class member may object in the district court and may generally appeal an adverse decision. *Devlin v. Scardelletti,* 536 U.S. 1, 122 S.Ct. 2005, 2013, 153 L.Ed.2d 27 (2002); *Powers v. Eichen,* 229 F.3d 1249, 1251 (9th Cir.2000).

*Devlin* held that nonnamed class members may appeal a settlement even if they didn't intervene in the district court. 122 S.Ct. at 2013. It rejected the argument that a congressional policy against satellite litigation in class actions required a narrower right of appeal. *Id.* at 2011. There are still limits on who may appeal, however, which include the constitutional requirement that a litigant present an actual case or controversy for the court to resolve. *See* U.S. Const. art. III.

■ A party must satisfy three conditions to have constitutional standing to sue: It must allege some concrete injury in fact; that injury must be fairly traceable to the defendant's actions; and (most importantly for our purposes) it must be likely, and not merely speculative, that a favorable decision will provide redress. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Utah v. Evans,* 536 U.S. 452, 122 S.Ct. 2191, 2197, 153 L.Ed.2d 453 (2002); *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976). These requirements must be met by a party appealing a judgment. *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). "Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation." *Simon,* 426 U.S. at 38, 96 S.Ct. 1917.

■ 3. A class member who participates in a common fund settlement—i.e., a settlement where both the class recovery and the attorney's fees are paid from the same fund—generally has standing to appeal the fee award. Both the recovery and the fee come out of the same pot, so by reducing the latter, the court increases the former and thus redresses the appellant's injury. *See Powers,* 229 F.3d at 1254 n. 4 ("[Appellant] has constitutional standing to make this appeal, as the size of his portion of the settlement award is inversely related to the size of the attorney fee award."). The class member may have standing to appeal the fee even if he doesn't also appeal the settlement. The reason is that common funds typically distribute to claimants whatever amount is left over after all expenses are paid, *see Zucker,* 192 F.3d at 1326, so a court could provide redress while leaving the terms of the settlement agreement intact. Finally, a class member who doesn't participate in the fund distribution—for example, one who fails to file a claim form—might still have standing to appeal the *settlement*; an appellate court could arguably provide redress by vacating the settlement, rendering moot the failure to submit a claim.

■ In contrast, where a class member refuses to participate in the settlement and appeals only the fee award, serious standing issues arise. The court must closely scrutinize the terms of the settlement agreement to determine whether modifying the fee award would actually benefit the objecting class member. If not, the appeal would not redress his injuries, and he would lack standing to proceed.[1]

The settlement agreement in this case provides that, after attorney's fees and other expenses have been deducted, the balance of the fund is to be distributed to shareholders who submitted timely claim forms. *See* Stipulation and Agreement of Settlement ¶¶ 1.1, 5.8, 5.12(b). If the fee

---

1. In *Zucker v. Occidental Petroleum Corp.,* 192 F.3d 1323 (9th Cir.1999), we observed that attorney's fees "are but an ancillary matter over which the district court retains equitable jurisdiction even when the underlying case is moot." *Id.* at 1329. But when a party seeks to *appeal* a fee award, it must independently satisfy Article III. *See, e.g., Powers,* 229 F.3d at 1254 n. 4; *Lobatz v. U.S. West Cellular of Cal., Inc.,* 222 F.3d 1142, 1146 (9th Cir.2000); *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.,* 33 F.3d 29, 30 (9th Cir.1994).

award is reduced on appeal after it has already been paid, class counsel must return the excess to the fund for distribution according to the agreement's terms. *See id.* ¶ 5.8. The agreement thus precludes class members who fail to submit claim forms from sharing in any reduction of attorney's fees.[2]

■ Gage didn't submit a claim form. If his appeal from the settlement were still before us, he might have standing because we could theoretically invalidate the provisions of the settlement agreement that required him to submit a claim. But Gage settled that appeal; it's final, and we have no authority to modify it. We are left only with Gage's assertion that "if he is successful on appeal in reducing the challenged fees, then he can seek to participate in the new money available to the class, since that recovery should not be precluded by his settlement with the defendants." But this unsupported claim is contrary to the express terms of the settlement agreement, which provides that only class members who submit claim forms may share in the settlement. Gage's appeal simply cannot redress the injury he claims to have suffered.

Gage relies on *Lobatz v. U.S. West Cellular of California, Inc.*, 222 F.3d 1142 (9th Cir.2000). *Lobatz* involved an appeal from a fee award that was payable independently of the settlement fund, in a case where the settlement itself had not been timely appealed. We found standing, reasoning that class counsel owed fiduciary responsibilities to the class members and that any overcharge would be held in constructive trust for their benefit. *Id.* at 1147.

■ Gage apparently interprets *Lobatz* to grant appellate standing to any class member who claims a breach of fiduciary duty. But he overreads the case. That a disgruntled class member may have a viable equitable claim against class counsel does not mean that a successful appeal will provide redress. "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Gage must show that his injuries will be redressed by a successful appeal, and not merely by some hypothetical civil suit.

In *Lobatz*, we said that "any injury [class members] suffered could be at least partially redressed by allocating to them a portion of [the] award." 222 F.3d at 1147. While we didn't articulate precisely how reducing the fee would result in such an allocation, presumably the settlement agreement in that case supported the result. Here, by contrast, the agreement provides that fee overcharges are to be distributed only to class members who filed timely claims.

■ Gage has failed to show that the relief he seeks will redress the injury he claims to have suffered. He therefore lacks standing to appeal.[3]

\* \* \*

---

2. The settlement agreement also states that "[e]xcept as otherwise ordered by the Court, all Class Members who failed timely to submit a completed Claim Form, shall be forever barred from receiving any payments pursuant to the Settlement Agreement." Stipulation and Agreement of Settlement ¶ 5.12(a). The court-order exception cannot reasonably be read as a font of substantive authority to

reallocate the fund as equity may dictate, particularly in light of the other provisions of the agreement that expressly provide that only claimants are entitled to payment. It merely provides that, if for some reason the court *does* order payment to a nonclaimant, following that order doesn't violate the agreement.

3. Gage argues that we can vacate the fee award even if he lacks standing to appeal the

Gage refused to submit a claim for his losses, as he was required to do in order to get his share of the settlement proceeds. He nonetheless appealed the settlement, arguing that the amount he would have received, had he bothered to claim it, was inadequate. He managed to convince Network Associates to settle that appeal, so his complaint now relates only to Lieff Cabraser's fee—a fee he didn't pay, in connection with a settlement that he forsook. His lack of standing should be apparent.

Gage asks us to "throw the moneylenders out of the Temple, by reining in class action plaintiff's attorneys and protecting their clients, the actual class members." Appellants' Opening Br. at 1. Were we to embark on a quest to reform securities litigation, we doubt that our approach would involve licensing self-appointed Samaritans to rove the legal campagna, appealing fee awards that no party with an actual stake in the outcome cares to dispute. That seems as likely a recipe for strike suits as one for reform. But we need not decide the point. As a court, we deal in cases, not crusades. Gage may fancy his appeal an instance of the latter, but it is certainly not one of the former.

**DISMISSED.**

---

fee. For that interesting proposition, he cites *Microsoft Corp. v. Bristol Technology, Inc.*, 250 F.3d 152, 155 (2d Cir.2001). That case addressed an appellate court's authority to vacate a district court decision under the doctrine of equitable vacatur when the parties had settled. *Id.* Equitable vacatur is an " 'extraordinary remedy' to be granted only in 'exceptional circumstances.' " *Id.* at 154 (quoting *U.S. Bancorp Mortgage Co. v. Bonner Mall P'ship*, 513 U.S. 18, 26, 29, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994)). Even if the doctrine could be put to the use that Gage envisions, no exceptional circumstances are present here.