Carrie COUSER, on behalf of herself and all others similarly situated, Plaintiff,

v.

COMENITY BANK, et al. Defendant.

Case No. 12cv2484–MMA–BGS.

United States District Court, S.D. California.

Signed May 27, 2015.

Abbas Kazerounian, Jason A. Ibey, Mohammad Kazerouni, Kazerounian Law Group, APC, Costa Mesa, CA, Joshua Swigart, Hyde & Swigart, San Diego, CA, Nicholas J. Bontrager, Martin & Bontrager, APC, Los Angeles, CA, Todd M. Friedman, Law Offices of Todd M. Friedman, P.C., Beverly Hills, CA, for Plaintiff.

Charles R. Messer, David J. Kaminski, Stephen A. Watkins, Carlson & Messer LLP, Los Angeles, CA, Scotti Mancinelli, Hoesch & Vander Ploeg, PLC, Zeeland, MI, for Defendant.

## ORDER:

### AFFIRMING IN PART TENTATIVE RULING

[Doc. No. 85]

### GRANTING PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

[Doc. No. 82]

### GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENT

[Doc. No. 63]

MICHAEL M. ANELLO, District Judge.

Plaintiff Carrie Couser, on behalf of herself and all others similarly situated, moves for Final Approval of Class Settlement and for Attorneys' Fees, Costs, and Incentive Award. *See* Doc. Nos. 63, 82. The Court held a final approval hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2). For the reasons stated below, the Court **GRANTS** the motion for final approval of the settlement and **GRANTS IN PART** the motion for attorneys' fees, costs, and a class representative incentive award.

### BACKGROUND

#### A. Factual Background

The individually named plaintiff in this action is Carrie Couser ("Plaintiff"), a resident of California.

Defendant Comenity Bank ("Defendant" or "Comenity") is a leader in the consumer credit lending industry. Comenity is incorporated in and has its principal place of business in Delaware.

Plaintiff brings this action against Defendant for negligent, knowing, and/or willful violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* Plaintiff seeks statutory damages and injunctive relief. According to Plaintiff's Complaint, in or around January 2012, Defendant contacted Plaintiff on her cellular telephone in an attempt to collect an alleged debt owed by Plaintiff's mother. Plaintiff alleges that Defendant used an automatic telephone dialing system to place multiple calls to her each day, and that she incurred charges for incoming calls. Plaintiff further alleges that such calls were not for emergency purposes, and that she did not provide prior express consent to receive such calls. Plaintiff also alleges that on several occasions she answered the telephone call and informed an agent for Defendant that her mother could not be reached on Plaintiff's telephone, that Defendant had an incorrect telephone number, and that Defendant must stop calling Plaintiff.

Plaintiff brings this action on behalf of herself and the nationwide class of persons that she seeks to represent who received collection calls from Defendant in violation of the TCPA. Under the TCPA, a plaintiff may seek to recover statutory damages in the amount of $500 per violation, and up to $1,500 per willful violation, as well as injunctive relief to prevent future violations. 47 U.S.C. § 227(b).

#### B. Procedural Background

On October 12, 2012, Plaintiff filed a putative class action Complaint for negligent, knowing, and/or willful violation of the TCPA, 47 U.S.C. § 227 *et seq. See* Doc. No. 1. On December 20, 2012, Defendant answered the Complaint. *See* Doc. No. 4.

On October 14, 2013, Plaintiff filed a notice of settlement. *See* Doc. No. 36. On September 5, 2014, Plaintiff filed a motion for preliminary approval of class action settlement and certification of the settle-

ment class. Plaintiff also requested that the Court appoint a class representative, appoint lead counsel, approve the notice plan, and set a final approval hearing. *See* Doc. No. 52.

On October 2, 2014, the Court granted the motion for settlement class certification and preliminary approval, and directed dissemination of class notice. *See* Doc. No. 54. The Court also appointed Plaintiff Carrie Couser as the class representative, and appointed lead counsel. The parties then commenced providing notice to the class and proceeded with the claims administration process. *See* Passarella Decl. ¶¶ 5–17.

On January 9, 2015, Plaintiff filed the instant motion for attorneys' fees, costs, and incentive payment. *See* Doc. No. 63. Plaintiff filed her motion for final approval of class action settlement on March 20, 2015. Plaintiff filed a Supplemental Brief on April 15, 2015.

On April 20, 2015, the Court held a fairness hearing on the matter pursuant to Federal Rule of Civil Procedure 23(e)(2). In light of the concerns raised during the hearing, the Court ordered supplemental briefing on the issue of attorneys' fees. Plaintiff subsequently filed supplemental briefing on May 4, 2015, in which she amended her attorneys' fees request to 16.9% of the common fund. Additionally, Plaintiff also represents that the Claims Administrator has agreed to reduce its cost/fee request to $2,778,664.48 from the initial $2,828,664.48. *See* Doc. No. 90 at 11; *see also* Passarella Supp. Decl., Doc. No. 90–23 ¶ 3.

## C. The Settlement

### 1. Settlement Class

This Court provisionally certified the settlement class as follows:

All persons whose cellular telephone numbers were called by Defendant, released parties, or a third party dialing company on behalf of Defendant or the released parties, using an automatic telephone dialing system and/or an artificial or prerecorded voice, without consent, from August 1, 2010 through May 26, 2014, excluding those persons whose cellular telephone number/s were marked with a "wrong number" code in Defendant's database (which persons are included in the putative class in *Picchi v. World Financial Network Bank, et al.*, Case No.:11–CV–61797, currently pending in the Southern District of Florida).

Excluded from the Class is Defendant, its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such companies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families, as well as persons who validly request exclusion from the Settlement Class.

*See* Doc. No. 52.

### 2. Settlement Terms

The Settlement requires Defendant to establish a non-reversionary Settlement Fund of $8,475,000, from which the class representative incentive payment, Class Counsel's fees and costs, costs of settlement administration, and Class Member payments will be made. Once the fees and costs are distributed, the remaining Net Settlement Amount will be distributed *pro rata* to each Class Member who submitted a valid and approved claim.

During the Class Period, Class Members have filed 308,026 valid claims.[1]

---

1. This number consists of 298,947 timely and valid claims and 9,079 late yet accepted

Class Member payments from the Settlement Fund are in the form of *pro rata* Settlement Checks, which will be mailed to each of the Class Members who made a valid and approved claim. The Claims Administrator will send Settlement Checks within 30 days after the Judgement has become final. Each Settlement Check will be negotiable for 180 days after it is issued, and any funds not paid out of as a result of un-cashed Settlement Checks shall be paid out as a *cy pres* award to a recipient to be agreed upon by the parties upon Court approval.

The Claims Administrator received 5 initial objections and 168 requests for exclusion. *See* Passarella Dec. ¶ 14. However, all 5 objectors have since withdrawn their objections and requested exclusion from the Settlement.

The Claims Administrator has incurred costs to date plus the anticipated costs of distributing settlement funds to class members of $2,828,664.48. Passarella Decl. ¶ 17. However, since the fairness hearing and as set forth in Plaintiff's supplemental brief, the Claims Administrator has agreed to reduce its cost/fee request to $2,778,664.48. *See* Passarella Supp. Decl. ¶ 3.

Class Counsel initially sought $2,118,750, or 25% of the common fund, in attorneys' fees plus $25,000 in reimbursement costs. However, in the supplemental briefing on the issue of attorneys' fees, Class Counsel has modified their request for attorneys' fees and now seeks $1,432,275, or 16.9% of the common fund.

The sole class representative, Carrie Couser, will receive an incentive award of $1,500.

Assuming the Court approves all fees and costs as requested, the $8,475,000 Settlement Fund will be distributed as follows: the Class Representative Incentive Award ($1,500), Class Counsel's requested fees ($1,432,275), Class Counsel's litigation expenses ($25,000), and the Settlement Administration costs ($2,778,664.48). This leaves the amount of $4,237,556.52 as the Net Settlement Fund available to pay Class Members. Accordingly, each of the 308,026 Class Members with approved claims will receive approximately $13.75.

## DISCUSSION

### A. Motion for Final Approval of Class Settlement

#### 1. Class Certification

■ A plaintiff seeking a Rule 23(b)(3) class certification must first satisfy the prerequisites of Rule 23(a). Once subsection (a) is satisfied, the purported class must then fulfill the requirements of Rule 23(b)(3). Here, the Court previously preliminarily certified the following class:

> All persons whose cellular telephone number's were called by Defendant, released parties, or a third party dialing company on behalf of Defendant or the released parties, using an automatic telephone dialing system and/or an artificial or prerecorded voice, without consent, from August 1, 2010 through May 26, 2014, excluding those persons whose cellular telephone number/s were marked with a "wrong number" code in Defendant's database (which persons are included in the putative class in *Picchi v. World Financial Network Bank*, et al., Case No.: 11–CV–61797, currently pending in the Southern District of Florida.)

> Excluded from the Class is Defendant, its parent companies, affiliates or subsidiaries, or any employees thereof, and any entities in which any of such compa-

claims submitted by Class Members.

nies has a controlling interest; the judge or magistrate judge to whom the Action is assigned; and, any member of those judges' staffs and immediate families, as well as persons who validly request exclusion from the Settlement Class.

At that time, the Court concluded that, for purposes of settlement only, the proposed Settlement Class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). *See* Doc. No. 54 ¶ 2. The Court also found that the proposed class satisfied the predominance and superiority requirements of Rule 23(b)(3). The Court affirms its previous findings and certifies the Settlement Class.

### 2. The Settlement

#### a) Legal Standard

■ Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir.1998). Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 625 (9th Cir.1982).

■ A court considers several factors in determining whether a proposed settlement is "fair, adequate and reasonable" under Rule 23(e). Such factors may include: (1) the strength of the case; (2) the risk, expense, complexity and likely duration of further litigation and the risk of maintaining class action status throughout the trial; (3) the stage of the proceedings (investigation, discovery and research completed); (4) the settlement amount; (5) whether the class has been fairly and adequately represented during settlement negotiations; and (6) the reaction of the class to the proposed settlement. *Staton v. Boeing Co.,* 327 F.3d 938, 959 (9th Cir. 2003). The Court need only consider some of these factors—namely, those designed to protect absentees. *See Molski v. Gleich,* 318 F.3d 937, 954 (9th Cir.2003) (overruled in part on other grounds).

■ Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 720 F.Supp. 1379, 1387 (D.Ariz.1989).

#### b) Analysis

#### (1) The strength of the case, and risk, expense, complexity and likely duration of further litigation

■ To determine whether the proposed settlement is fair, reasonable, and adequate, the Court must balance against the continuing risks of litigation (including the strengths and weaknesses of the Plaintiff's case) the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery. *See In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 458 (9th Cir.2000). In other words,

[t]he Court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. In this respect, "It has been held proper to take the bird in hand instead of a prospective flock in the bush."

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D.Cal.2004) (citations omitted).

Regarding the strength of the case, Plaintiff claims that "Class Counsel believe strongly in the merits of the claims brought on behalf of the Class." Doc. No. 82–1 at 25. However, Defendant claims to have various meritorious defenses, including its denial that it violated the TCPA, and that this Action would be amenable to class certification (both because of the presence of arbitration clauses in cardholder agreements for many Class Members, and because some courts in this District have denied motions for class certification in TCPA cases).

## (2) The Risk of Maintaining Class Action Status Throughout the Trial

■ Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed.R.Civ.P. 23(c)(1)(C) ("An order under that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.,* 913 F.Supp.2d 964, 976 (E.D.Cal.2012) (finding that the complexity of the case weighed in favor of approving the settlement).

Here, the parties reached a settlement before the Court determined whether certifying the class was appropriate. Although Defendant has stipulated to the class certification for settlement purposes, Defendant insists that this action would not be amenable to class certification. Specifically, the presence of an arbitration clause in the cardholder agreement (which includes a class action waiver) for many Class Members presents a major risk in seeking class certification and maintaining a class throughout litigation. Additionally, Plaintiff recognizes that some Courts in this District have denied motions for class certification in TCPA cases. Based on the parties' representations to the Court, there is a risk that the Class would either not be certified or that something may arise before trial to decertify the class. Thus, this factor weighs in favor of settlement.

## (3) The stage of the proceedings (investigation, discovery and research completed)

■ "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *DIRECTV, Inc.,* 221 F.R.D. at 528. In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir.1998) (quoting *In re Chicken Antitrust Litig.,* 669 F.2d 228, 241 (5th Cir.1982)).

Here, Plaintiff represents that the Settlement is the result of intensive, arms-length negotiations. The parties engaged in both formal and informal discovery regarding Plaintiff's claims and Defendant's defenses, including written Interrogatories and Requests for Production of documents. Kazerounian Decl. ¶ 10. Class Counsel took 2 depositions pursuant to Federal Rule of Civil Procedure 30(b)(6). The parties appeared for an ENE and telephonic CMC before Judge Skomal, and then participated in 3 full-day mediation sessions before the Honorable Leo Papas (Ret.). *See id.* at ¶ 9–10. After reaching a settlement in principle, the parties engaged in extensive discussion to determine the details surrounding the Settlement—in particular, how many cell phones were contacted during the Class Period and what types of consent Defendant was relying on. Plaintiff maintains that because the two

main disputed issues are legal, and not factual, in nature, the parties have exchanged sufficient information to make an informed decision regarding settlement. Doc. No. 82–1 at 31. Based on the record currently before the Court, it appears the Settlement Agreement resulted from arms-length negotiations and was not the result of collusion. This factor supports approval.

### (4) The Settlement Amount

 "In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527 (internal citation and alteration omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Officers for Justice*, 688 F.2d at 628).

Pursuant to the Settlement Agreement, Defendant must establish a non-reversionary Settlement Fund of $8,475,000, from which the Class Representative Incentive Payment, Class Counsel's fees and costs, Settlement Administration costs, and the Class Member claims will be paid. The sole class representative, Carrie Couser, will receive an incentive award of $1,500. Class Counsel seeks $1,432,275 in attorneys' fees plus $25,000 in litigation costs. The Claims Administrator has incurred costs in the amount of $2,778,664.48 for Settlement Administration. Assuming these fees and costs are approved as requested, the Net Settlement Fund available to pay Class Members is $4,237,650.52. The Claims Administrator approved 308,026 Class Member claims, resulting in a *pro rata* payment of approximately $13.75 per Class Member.

Plaintiff asserts that "[t]his payment is a significant win for Class Members who only had to take a few minutes to submit a claim" and "Class Members were able to avoid the time, expense and risk associated with bringing their own individual TCPA action, where they could receive an award of $500 per negligent violation." Doc. No. 82–1 at 26. To support her motion for settlement approval, Plaintiff asserts that this payment is in line with other TCPA settlements. Upon reviewing the cases cited by Plaintiff, however, the Court finds the Class Member recovery amount is on the low end when compared with other TCPA settlements. *Compare Knutson v. Schwan's Home Serv., Inc.*, No. 3:12–CV–00964–GPC, 2014 WL 3519064, at *4–5 (S.D.Cal. July 14, 2014) (approving TCPA settlement where 166 Class Member claimants could recover $20 settlement check plus a $80 merchandise voucher); *Gutierrez v. Barclays Grp.*, No. 10cv1012–DMS, Doc. No. 58 (S.D.Cal. Mar. 12, 2012) (approving TCPA settlement where each of the approximate 66,000 class members claimants received approximately a $100 credit or settlement check); *Adams v. AllianceOne*, No. 08cv0248–JAH, Doc. No. 137 (S.D.Cal. Sept. 28, 2012) (approving settlement for $40 monetary payment to approximately 63,573 claimants); *Bellows v. NCO Fin. Sys., Inc.*, 07–cv–1413–W, Doc. Nos. 53, 54 (S.D.Cal. July 13, 2009) (approving TCPA class settlement where the 29 class member claimants received $70).

However, the Court finds this case is distinguishable based on the large number of Class Member claimants and the high claims rate. *See, e.g., Rose v. Bank of Am. Corp.*, No. 5:11–CV–02390–EJD, 2014 WL 4273358, at *5 (N.D.Cal. Aug. 29, 2014) (finding a $32 million settlement where individual class members received on average between $20 to $40 was reasonable for

227,701 claims out of 7 million potential class members "in light of the size of the class, is in line with recoveries obtained in similar TCPA class action settlements"). Here, there were 308,026 claims out of 3,982,645 potential class members, resulting in a higher than average claims rate of 7.7%. Although Class Members are only expected to recover approximately $13.75, the Court finds that in light of the large number of Class Member claimants and high claims rate, the amount of the Settlement Fund weighs in favor of approving the Settlement.

### (5) Whether the Class has been fairly and adequately represented during settlement negotiations

 "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528; *Adoma*, 913 F.Supp.2d at 977.

Class Counsel asserts that they are both familiar with the specific facts and issues arising in this case and also have considerable expertise in TCPA and class action litigation. For example, Mr. Kazerouni had litigated over 300 consumer class actions, and 50% of his class action practice involves litigating TCPA claims. *See* Kazerounian Decl., Doc. No. 63–2, ¶ 10. Additionally, Joshua B. Swigart and Todd Friedman also have significant experience in consumer class action litigation, including TCPA lawsuits. *See* Swigart Decl., Doc. No. 63–8, ¶¶ 8–9; Friedman Decl., Doc. No. 63–9, ¶¶ 9–10. It appears the Class was adequately represented by competent counsel. This factor supports approval of the settlement.

### (6) The reaction of the Class to the proposed settlement

 The Ninth Circuit has held that the number of class members who object to a proposed settlement is a factor to be considered. *Mandujano v. Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir.1976). The absence of a large number objectors supports the fairness, reasonableness, and adequacy of the settlement. *See In re Austrian & German Bank Holocaust Litig.*, 80 F.Supp.2d 164, 175 (S.D.N.Y.2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations omitted); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 624 (N.D.Cal.1979) (finding "persuasive" the fact that 84% of the class has filed no opposition).

As discussed above, there were 308,026 Class Members claims filed out of 3,982,-645 potential class members, resulting in a higher than average claims rate of 7.7%. The Claims Administrator received 168 requests for exclusion out of the 3,982,645 potential class members. Further, although 5 Class Members initially filed objections, they subsequently withdrew their objections and decided to opt-out of the Settlement. Accordingly, all of the objections have been withdrawn. Upon considering the high rate of Class Member claims and the relatively low number of requests for exclusion, the Court finds the reaction of the Class to the Settlement favors approval of the Settlement.

### 3. Conclusion

Because the majority of the factors discussed above favor approving the Settlement, the Court finds that the settlement is "fair, adequate and reasonable" under Federal Rule of Civil Procedure 23(e). The Court therefore **GRANTS** Plaintiff's

motion for final approval of this Settlement.

## B. Motion for Award of Attorneys' Fees and Costs

■ In her initial motion, Plaintiff requested an attorneys' fees award of $2,118,750, or 25% of the common fund, and $25,000 in costs. During the fairness hearing, the Court raised some concerns about the amount of attorneys' fees in light of the results achieved for Class Members and the relative burden of litigation on Class Counsel. In the supplemental briefing on the issue of attorneys' fees, Class Counsel modified their request for attorneys' fees and now seeks $1,432,275, or 16.9% of the common fund.

### 1. Relevant Law

■ Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir.2002). Regardless of whether the Court uses the percentage approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir.2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048–50. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.2011).

■ "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, Fed.R.Civ.P. 23(h), courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941. Thus, "to avoid abdicating its responsibility to review the agreement for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir.2003)

The Ninth Circuit has characterized the district court's role in awarding fees as that of a fiduciary of the class. *Id.* at 970 ("In setting the amount of common fund fees, the district court has a special duty to protect the interests of the class."). As the court has further explained, "[b]ecause in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs." *Vizcaino*, 290 F.3d at 1052 (quoting *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1302 (9th Cir.1994)). The Ninth Circuit has further cautioned district courts that "fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper." *Id.* With these directives in mind, the Court turns to the reasonableness of the requested attorneys' fees in this action.

### 2. Analysis

Here, Class Counsel seeks an award of at least $1,432,275, or 16.9% of the Settlement Fund. Alternatively, if the Court elects to apply the lodestar method, Class Counsel seeks their current lodestar amount of $453,663.50 with an upward multiplied of 3.157, totaling $1,432,275.

Pursuant to the Settlement Agreement, Defendant has agreed not to oppose an attorneys' fees award not to exceed 25% of the Settlement Fund. However, the Ninth Circuit has made clear that "a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request." *In re Bluetooth,* 654 F.3d at 943. The court explained the reasoning for this as follows:

> Ordinarily, a defendant is interested only in disposing of the total claim asserted against it, and the allocation between the class payment and the attorneys' fees is of little or no interest to the defense. A district court therefore must ensure that both the amount and mode of payment of attorneys' fees are fair, regardless of whether the attorneys' fees come from a common fund or are otherwise paid.

*Id.* (internal citations and quotations marks omitted). Thus, the fact that Defendant does not oppose the fees requested has little bearing on the Court's determination of whether the requested fees are reasonable.

 Because this Settlement has produced a common fund for the benefit of the entire class, the Court elects to award fees under the percentage-of-recovery method. *See In re Bluetooth,* 654 F.3d at 942; *see also Hanlon,* 150 F.3d at 1029 ("In 'common-fund' cases where the settlement or award creates a large fund for distribution to the class, the district court has discretion to use either a percentage

or lodestar method."). Plaintiff contends the requested fee award of at least 16.9% of the common fund is reasonable and highlights the fact that 25% is the Ninth Circuit's benchmark percentage. It is well established that 25% of the gross settlement amount is the benchmark in the Ninth Circuit for attorneys' fees awarded under the percentage method. *See, e.g., Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990); *Vizcaino,* 290 F.3d at 1047. However, it is equally well established that "[t]he 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases." *Id.* at 1048. Accordingly, "[t]he benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers,* 904 F.2d at 1311. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino,* 290 F.3d at 1048. "The question is not whether the district court should have applied some other percentage, but whether in arriving at its percentage it considered all the circumstances of the case and reached a reasonable percentage." *Id.*

To determine the reasonableness of the requested fees, the Court considers the factors set forth above. First, the Court considers the results achieved for the Class Members. *See In re Bluetooth,* 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). Here, the Settlement provides monetary damages for Class Members. The overall Settlement is $8,475,000 on behalf of the 3,982,645 potential class members, and after deducting the

requested fees, awards, and costs, the Net Settlement Fund available to pay Class Members is $4,237,650.52. Pursuant to the Settlement, this amount is divided *pro rata* among the 308,026 Class Members who submitted accepted claims, so that Class Members will receive approximately $13.75. As discussed above, this amount appears to be on the low end of monetary recovery for TCPA class action settlements. *See also Rose*, 2014 WL 4273358, at *10 (comparing various approved TCPA settlements and finding "the $20 to $40 range falls in the lower range of recovery achieved in other TCPA class action settlements"). Further, the Settlement does not provide for injunctive or any other type of non-monetary relief. *See Grannan v. Alliant Law Grp.*, No. C10–02803 HRL, 2012 WL 216522, at *7 (N.D.Cal. Jan. 24, 2012) ("Class Counsel has obtained a stipulated injunction that would prevent defendant from committing further TCPA violations."); *see also Rose*, 2014 WL 4273358 at *11 (discussing non-monetary relief achieved in other TCPA class action settlements). Although the results here are favorable to the Class, they are not exceptional given the lower amount of monetary relief and the lack of any non-monetary relief achieved in other TCPA class action settlements.

Another factor for the Court to consider is the risk of continued litigation. *See Vizcaino*, 290 F.3d at 1048–49. In *Vizcaino*, the court noted it was "extremely risky" for class counsel to continue litigating its case after losing twice at the district court and then reviving the case on appeal. *See id.* (stating "[r]isk is a relevant circumstance" and affirming award of 28% of the common fund). A similar level of risk was not present in this case. The parties reached a settlement relatively early in the litigation—prior to filing a motion for class certification or any dispositive motions or adverse rulings. Plaintiff as-

serts that if the case had proceeded through litigation, there was a risk that the Class may not be certified or that the Class Members would not recover at all, highlighting the presence of an arbitration clause in the cardholder agreement for many of the Class Members as well as the fact that some courts have refused to certify TCPA class actions. While there was some risk in litigating the matter, the level of risk does not support an award of attorneys' fees at or near the 25% benchmark. *See Vizcaino*, 290 F.3d at 1048–49.

The Court next considers the skill and quality of Class Counsel's work, the burdens carried by Class Counsel, and the contingent nature of the fee. *See Vizcaino*, 290 F.3d at 1050. Based on Class Counsel's briefing and argument before the Court, it appears that Class Counsel was competent in investigating this action and achieving a Settlement. With respect to Class Counsel's burden, however, the Court finds Vizcaino instructive. There, the Ninth Circuit found it relevant that "counsel's representation of the class—on a contingency basis—extended over eleven years, entailed hundreds of thousands of dollars of expense, and required counsel to forgo significant other work, resulting in a decline in the firm's annual income." *Id.* The court also cited to other cases, noting "that litigation lasted more than thirteen years" and "considering counsel's bearing the financial burden of the case." *Id.* (citing *Six (6) Mexican Workers*, 904 F.2d at 1311 and *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir.1993)). Here, however, Class Counsel did not carry a similar burden or risk of non-payment. The parties reached a settlement in this action after only twelve months and before the certification stage, and the entire action has been litigated in just over two and half years. Additionally, the amount of hours expended over the course

of litigating this class action further supports the conclusion that Class Counsel were not significantly burdened or precluded from other employment. Finally, although Class Counsel litigated this case on a contingency—which necessarily involved incurring costs and expenses without guarantee of recovery—the risk of non-payment in this case on its own does not support the requested fees. As another district court observed in an action involving some of the same counsel, TCPA class actions are prone to settle. *See Rose*, 2014 WL 4273358, at *12 ("Class Counsel, for the most part, have a great deal of experience litigating TCPA class actions and presumably would 'know how to pick a winner' . . . [and] because the TCPA has the potential of ruinous financial liability ($500 or $1,500 per violation, and some defendants are accused of millions of violations), defendants will almost always settle if there is any merit at all to the case."). In light of the particular circumstances of this case, the Court finds that the burden on counsel and risk of nonpayment do not support the benchmark fee award.

The Ninth Circuit has also instructed district courts to consider the lodestar cross-check as one factor in assessing the reasonableness of a fee request. *See Vizcaino*, 290 F.3d at 1050 (recognizing "the lodestar may provide a useful perspective on the reasonableness of a given percentage award"); *see also In re Bluetooth*, 654 F.3d at 943 (encouraging "comparison between the lodestar amount and a reasonable percentage award"). Based on the summary figures provided by Plaintiff, Class Counsel incurred fees under the lodestar method totaling $453,663.50 based on 850.30 hours of work at the 5 Class Counsel's respective hourly rates, ranging from $365 to $595.[2] *See* Doc. No. 90 at 31. Thus, the requested percentage of 16.9% of the common fund equals approximately 3.157 times the lodestar figure. Although Plaintiff cites to various cases in which other judges in this district have awarded multipliers of 3 or more, the Court has examined those case and found them distinguishable based on results achieved for the Class Members, as discussed above. Further, other courts have awarded multipliers of less than 3 in cases involving some of the same Class Counsel. *See, e.g.,*

2. For purposes of the lodestar cross-check, the Court uses the lodestar summary figures provided by Class Counsel. *See In re Online DVD–Rental Antitrust Litig.*, 779 F.3d 934, 955 (9th Cir.2015) (explaining the district court compared the percentage of the fund amount to the summary lodestar numbers provided by class counsel); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 264 (N.D.Cal.2015) ("[I]t is well established that the lodestar cross-check calculation need entail neither mathematical precision nor bean counting ... courts may rely on summaries submitted by the attorneys and need not review actual billing records.") (internal quotations and alterations omitted); *Bond v. Ferguson. Enterprises, Inc.*, No. 1:09–CV–1662 OWW MJS, 2011 WL 2648879, at *12 (E.D.Cal. June 30, 2011) (recognizing that where "the lodestar is being used here as a cross-check, the court may use a rough calcu-

lation of the lodestar"). The Court makes no finding as to the reasonableness of Class Counsel's stated hourly rate or number of hours incurred. *See Mason v. Heel, Inc.*, No. 3:12–CV–03056–GPC, 2014 WL 1664271, at *9 (S.D.Cal. Mar. 13, 2014) (using Class Counsel's lodestar figures to conduct a lodestar cross-check analysis, even though the court noted Class Counsel's rates were "slightly inflated").

The Court further notes that although Plaintiff cites a previous decision of this Court in *Blair v. CBE Group, Inc.*, No. 13cv134–MMA, 2014 WL 4658731 (S.D.Cal.2014) in support of its fee motion, Plaintiff misreads the decision. In *Blair*, Plaintiffs *requested* an hourly rate of $400 for a third-year associate, but the Court ultimately found an hourly rate of $225 was reasonable based the *Kerr* factors and circumstances of the case. *See id.* at *5.

*Rose,* 2014 WL 4273358, at *12 (discussing the range of multipliers awarded in various TCPA class action settlements and finding a multiplier of 2.59 appropriate). Although Plaintiff insists that the complexity of the issues and risk of non-payment support an award of a multiplier of 3 or more, for the same reasons as discussed in detail above, the Court finds that these considerations do not support a finding that the requested multiplier of 3.157 is reasonable. *See, e.g., Vizcaino,* 290 F.3d at 1050 ("Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable.").

Based on the current record, the Court cannot conclude that Class Counsel's requested fee amount of 16.9% of the common fund is reasonable, even taking into account Plaintiff's arguments regarding the complexity of the issues and the risk of non-payment based on the contingent nature of the representation. Upon considering the results obtained for Class Members, as well as the risks of continued litigation, Class Counsel's skill and quality of work, the complexity of the issues litigated, the burden on Class Counsel, the contingent nature of the fees, and awards in similar cases, the Court finds that 15% of the common fund, or $1,271,250, is reasonable. When cross-checked with the lodestar amount, the awarded fees equals approximately 2.80 times the lodestar amount. The Court finds this amount reasonably rewards Class Counsel for the risk of non-payment based on their contingent representation, the favorable results achieved for the Class, the burden on class counsel, and the skill and quality of Class Counsel's work.

■ Finally, Class Counsel seek reimbursement of their out-of-pocket expenses in this litigation, in the amount of $25,000.00. Class counsel represent that they incurred costs totaling $28,110.64 as follows: $9,175.49 by Hyde & Swigart; $14,028.55 by Kazerounian Law Group; and $4,896.00 by Law Offices of Todd Friedman. They subsequently filed briefing in support of these costs. *See* Doc. No. 86. Class Counsel further represents that although they incurred costs in the amount of $28,110.64, they only seeks reimbursement of $25,000 as provided in the Settlement Agreement. Class Counsel are entitled to reimbursement of the out-of-pocket costs that they reasonably incurred investigating and prosecuting this case. *See In re Media Vision Tech. Sec. Litig.,* 913 F.Supp. 1362, 1366 (N.D.Cal.1996) (citing *Mills v. Electric Auto–Lite Co.,* 396 U.S. 375, 391–92, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970)); *Staton,* 327 F.3d at 974. The Court finds that Class Counsel reasonably incurred the out-of-pocket costs in connection with this litigation, and that such costs were advanced by Class Counsel for the benefit of the Class. Accordingly, the Court awards Class Counsel a reimbursement of their requested litigation costs.

### 3. Conclusion

The Court finds that 15% of the common fund, or $1,271,250, is a reasonable award of attorneys' fees in this litigation. The Court therefore **GRANTS IN PART** Plaintiff's Motion for Attorneys' Fees and **APPROVES** an award of attorneys' fees in the amount of $1,271,250 to Class Counsel, as well as Class Counsel's request for litigation costs and expenses in the amount of $25,000.[3]

---

**3.** In light of Class Counsel's attorneys' fee award of 15% of the common fund, the $8,475,000 Settlement Fund will be distributed as follows: the Class Representative Incentive Award ($1,500), Class Counsel's requested fees ($1,271,250), Class Counsel's litigation expenses ($25,000), and the Settlement Administration costs ($2,778,664.48). This

### C. Motion for Class Representative Service Payments

 "Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class." *Chun–Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 854 (N.D.Cal.2010) (citing *Staton,* 327 F.3d at 977). Additionally, courts should ensure that an incentive award is not based on fraud or collusion. *Id.*

The only class representative in this case is Plaintiff Carrie Couser. No class member has objected to Plaintiff's request for an award of $1,500. Further, Ms. Couser has been actively involved with the case since its inception, including reviewing court filings, communicating with class counsel, and reviewing and approving the settlement. Couser Decl. ¶ 4. Finally, this award does not appear to be the result of fraud or collusion. Accordingly, the Court **APPROVES** the $1,500 service award as reasonable.

### CONCLUSION

The Court **GRANTS** Plaintiff's motion and finds the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e). The Court finds that the proposed settlement appears to be the product of serious, informed, arms-length negotiations, that the settlement was entered into in good faith, and that Plaintiff has satisfied the standards for final approval of a class action Settlement under federal law.

Furthermore, the Court **GRANTS IN PART** Plaintiff's motion for an award of attorneys' fees in the amount of 15% of the common fund, or $1,271,250, and the requested costs in the amount of $25,000.

leaves the amount of $4,398,585.52 as the Net Settlement Fund available to pay Class Members. Accordingly, each of the 308,026 Class

Finally, the Court finds the class representative service payment of $1,500 is reasonable.

### JUDGMENT AND ORDER OF DISMISSAL

The Court **APPROVES** the Settlement and **ORDERS** the parties to implement the Settlement Agreement according to its terms and conditions and this Court's Final Order.

The Capitalized terms used in this Final Order shall have the meanings and/or definitions given to them in the Settlement Agreement. or, if not defined therein, the meanings and/or definitions given to them in this Order.

This Final Order incorporates the Settlement Agreement and its accompanying exhibits [Doc. No. 52–3].

As discussed above, a total of 168 valid requests for exclusion were received, which includes 4 late requests for exclusion that the Parties have agreed to treat as valid opt-outs and the Court approves. A list of those individuals requesting exclusion from the Class and Settlement is set forth as Exhibit A [Doc. No. 83–3] in support of Plaintiff's Supplemental Briefing filed April 15, 2015, which is incorporated by reference. The Court hereby excludes those individuals from the Class and Settlement.

This Order is binding on all settlement Class Members, except those individuals named in Exhibit A who validly and timely excluded themselves from the Class.

The Class Representative, settlement Class Members, and their successors and assigns are permanently barred and enjoined from instituting or prosecuting, either individually or as a class, or in any other capacity, any of the Released Claims

Members with approved claims will receive approximately $14.28.

against any of the Released Parties, as set forth in the Agreement. Pursuant to the Release contained in the Agreement, the Released Claims are compromised, discharged, and dismissed with prejudice by virtue of these proceedings and this Order.

This Order is not, and shall not be, construed as an admission by Defendant of any liability or wrongdoing in this or in any other proceeding.

Without affecting the finality of this Order, the Court shall retain continuing and exclusive jurisdiction over the Parties and all matters relating to the Action and/or Agreement, including the administration, interpretation, construction, effectuation, enforcement, and consummation of the Settlement and this Order.

The Court hereby **DISMISSES** this action with prejudice.

**IT IS SO ORDERED.**